**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBBIE B. POLLOCK | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO. 06-4089 |
| | : | |
| THE CITY OF PHILADELPHIA; TYRONE | : | |
| COOK; JAMES CLARK; and, SYLVESTER | : | |
| JOHNSON, in Their Individual Capacities | : | |
| Defendants. | : | |

_____

DuBois, J.                                                              August 7, 2008

## TABLE OF CONTENTS

MEMORANDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        A.      Defendant Cook's Supervision of Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        B.      Plaintiff's Complaints of Harassment by Defendant Cook . . . . . . . . . . . . . . . . . . 5
        C.      Defendant Cook's Worsening Treatment of Plaintiff . . . . . . . . . . . . . . . . . . . . . . 6
        D.      Plaintiff's Arrest for Making Terroristic Threats . . . . . . . . . . . . . . . . . . . . . . . . . 6
        E.      Plaintiff's Dismissal from Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        A.      Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        B.      Qualified Immunity – Counts One through Five . . . . . . . . . . . . . . . . . . . . . . . 11
        C.      42 U.S.C. § 1983 – Counts One through Five . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.      DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        A.      Plaintiff's Claims Against the Individual Defendants . . . . . . . . . . . . . . . . . . . . 13
                1.      Equal Protection Claim Against Defendant Cook – Count One . . . . . . . 13
                        a.      Constitutional Violation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                                i.      Legal Standard for Hostile Work Environment Claim . . 15
                                ii.     Applicability of Hostile Work Environment Standard to
                                        § 1983 Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
                                iii.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

|  |  | b. | Clearly Established Constitutional Right | 22 |
|  |  | c. | Outstanding Issues of Fact Under Forbes | 23 |
|  | 2. |  | Plaintiff's First Amendment Claims Against Defendants Clark, Cook and Johnson – Counts Two through Four | 23 |
|  |  | a. | Legal Standard for First Amendment Claim | 24 |
|  |  | b. | First Amendment Claim Against Defendant Clark – Count Two | 25 |
|  |  | c. | First Amendment Claim Against Defendant Cook – Count Three | 31 |
|  |  | d. | First Amendment Claim Against Defendant Johnson – Count Four | 33 |
|  | 3. |  | Fourth Amendment Claim Against Defendant Clark – Count Five | 36 |
|  |  | a. | Constitutional Violation | 36 |
|  |  |  | i.  Probable Cause Standard | 36 |
|  |  |  | ii.  Plaintiff Must Prove that Defendant Clark Arrested Him or Intentionally Caused His Arrest | 38 |
|  |  |  | iii.  Analysis | 38 |
|  |  | b. | Clearly Established Constitutional Right | 39 |
| B. |  |  | Plaintiff's Claims Against the City of Philadelphia – Counts Six and Seven | 40 |
| VI. | CONCLUSION |  |  | 43 |
| ORDER |  |  |  | 44 |

**MEMORANDUM**

## I.  INTRODUCTION

This case arises out of plaintiff Robbie B. Pollock's employment with the City of Philadelphia Police Department ("City").  On or about September 17, 2004, plaintiff was arrested for making terroristic threats against his supervisor.  Plaintiff was discharged from his employment with the City on October 20, 2004.

Plaintiff alleges that his arrest and discharge were improper.  Plaintiff also alleges that he was discriminated against based on his race during his employment.  He asserts claims under 42 U.S.C. §§ 1981 and 1983 against the City and three of its employees – Tyrone Cook, James Clark and Sylvester Johnson – in their individual capacities.  Plaintiff avers that defendants violated his rights under the Equal Protection Clause and the First and Fourth Amendments.

Presently before the Court is Defendants' Motion for Summary Judgment as to all counts of the Second Amended Complaint.  For the reasons set forth below, defendants' motion is granted in part and denied in part.  The Court denies defendants' motion with respect to plaintiff's equal protection claim against defendant Clark, and grants the motion in all other respects.

## II.    BACKGROUND

Plaintiff, an African-American male, began working as a custodial employee for the City on January 24, 1999.  (Defs.' Mot. 4; Pl.'s Resp. 2.)  In February of 1999, plaintiff was assigned to clean to the Northwest Detective Division, located at 5960 North Broad Street, Philadelphia, Pennsylvania.  (Defs.' Mot. 4; Pl.'s Resp. 2.)  The Northwest Detective Division was located in the same building as the 35th District.  (Defs.' Mot. 5; Pl.'s Resp. 2.)  During plaintiff's initial period of employment, he shared janitorial duties for the facility with a female custodian.  (Defs.' Mot. 5; Pl.'s Resp. 2.)  Despite the presence of two custodians at the facility, plaintiff was asked to perform a disproportionate share of the work.  (Pollock Dep., 7/9/07, Ex. 1 to Defs.' Mot. at 41-43.)  Approximately two to three years after plaintiff began his employment at 5960 Broad Street, the second custodian resigned her employment and was not replaced.  (Defs.' Mot. 5; Pl.'s Resp. 2.)  Because no replacement custodian was hired, plaintiff was tasked with keeping the entire premises clean.  (Pollock Dep. 43.)

### A.    Defendant Cook's Supervision of Plaintiff

In early 2004, Administrative Sergeant Tyrone Cook, also an African-American male, became plaintiff's direct supervisor.  (Defs.' Mot. 5; Pl.'s Resp. 4.)  Plaintiff alleges that defendant Cook "almost immediately . . . began a pattern of harassing behavior towards

3

plaintiff." (Pl.'s Resp. 4; 2d Am. Compl. ¶ 14; Pollock Dep. 73.) The harassment included, <u>inter</u> <u>alia</u>: 1) changing plaintiff's time card and marking him absent when he had worked (Pollock Dep. 75); 2) reducing plaintiff's pay without cause (<u>id.</u> at 75); 3) spitting sunflower seeds and shells from other nuts in areas already cleaned by plaintiff and directing plaintiff to clean the areas (<u>id.</u> at 76-77); 4) cursing at plaintiff (<u>id.</u> at 80-81); 5) picking his nose and ordering plaintiff to clean it up (<u>id.</u> at 83-85); 6) yelling at plaintiff and calling him names in front of others (<u>id.</u> at 83-84); and 7) threatening to write plaintiff up (<u>id.</u> at 86). This harassment occurred on a regular basis. (<u>Id.</u> at 75-86.)

According to plaintiff, defendant Cook's harassment was motivated by racial animus. (<u>Id.</u> at 87-89; Pl.'s Dec., Ex. P to Pl.'s Resp. at ¶ 14.) Defendant Cook referred to plaintiff as a "dumb nigger with an easy job." (Pollock Dep. 87; Pl.'s Dec. ¶ 14.) Plaintiff's coworkers and other City personnel gave Cook the nickname "Sarge" and plaintiff the nickname "T.J." representing characters from the movie "Soldier's Story" in which an African-American army sargeant mistreated an African-American enlisted man because of his race. (Pollock Dep. 88-89.)

Plaintiff's coworkers were aware of the tension between him and defendant Cook. (Knecht Dep., Ex. C to Pl.'s Resp. at 9-10; Swinton Dep., Ex. D to Pl.'s Resp. at 9; McCarthy Dep., Ex. F to Pl.'s Resp. at 20; Harris Dep., Ex. H to Pl.'s Resp. at 11-12.) One co-worker observed that defendant Cook did not yell at anybody like he did plaintiff and that plaintiff's stress level was higher around defendant Cook than it was around other supervisors. (Harris Dep. 19-20, 25.) Plaintiff alleges that the stress he experienced from his relationship with defendant Cook interfered with his ability to perform his job. (<u>Id.</u> at 32.) Plaintiff experienced stress-related attacks at work and once needed to be taken away in an ambulance. (Pollock Dep.

92-95; Missouri Dep., Ex. M to Pl.'s Resp. at 28-29.)  Plaintiff was prescribed medication to deal with the stress.  (Pollock Dep. 95-96.)

Plaintiff's relationship with defendant Cook was discussed by other employees at the Northwest Detective Division.  At one point, plaintiff overheard a conversation between defendant Clark and Detective Malachi Jones during which Jones stated "the day [plaintiff] snaps, that's going to be the day the cookie crumbles."  (Pollock Dep. 89.)  Defendant Clark responded "yes, that's what I'm trying to avoid . . . because I know that . . . that's what's going to happen."  (Id.)

**B.    Plaintiff's Complaints of Harassment by Defendant Cook**

Defendant Clark was made administrative lieutenant responsible for overseeing defendant Cook sometime in August or September of 2004.  Plaintiff complained to defendant Clark about defendant Cook's treatment of him.  (Pollock Dep. 100-01; Clark Dep., 2/13/07, Ex. 14 to Defs.' Mot. at 21-24 (hereinafter "Clark Dep. I"); Clark Dep., 2/28/07, Ex. 9 to Defs.' Mot. at 16, 34-38 (hereinafter "Clark Dep. II"); Pl.'s Dec. ¶ 21-22.)  Plaintiff told defendant Clark that defendant Cook treated him like a slave.  (Pl.'s Dec. ¶ 22.)  During one conversation, plaintiff also told defendant Clark that defendant Cook referred to plaintiff as a "dumb nigger with an easy job." (Id.)

Defendant Clark acknowledges that plaintiff complained about his treatment, but denies that he complained about discrimination on the basis of his race.  (Pl.'s Resp. 9; Clark Dep. I at 22.)  However, defendant Clark testified that he might have told plaintiff he could go to the Equal Employment Opportunity Commission ("EEOC") if he felt he was being discriminated against.  (Clark Dep. II at 37-38.)  Defendant Clark told defendant Cook that plaintiff felt

5

defendant Cook was being unfairly hard on him and unfair towards him.  (Id. at 16.)  In response, defendant Cook stated to defendant Clark that plaintiff was not doing his job.  (Id. at 22.)

### C.      Defendant Cook's Worsening Treatment of Plaintiff

Plaintiff states that defendant Cook's harassment worsened after plaintiff complained to defendant Clark.  (Pollock Dep. 100-02.)  Specifically, plaintiff alleges that defendant Cook told him that he could not take his medication, which was prescribed for plaintiff to handle work-related stress, because, if he did, defendant Cook would have plaintiff arrested for using drugs on the job.  (Id. at 106.)  Plaintiff further states that defendant Cook falsely accused him of having left work early.  (Id. at 101-02.)

On September 15, 2004, plaintiff called out sick to defendant Clark and told him that he could no longer tolerate his treatment.  (Id. at 106.)  Plaintiff took a stress leave from work that day, and the following day, September 16, 2004.  (Id.)

### D.      Plaintiff's Arrest for Making Terroristic Threats

On September 17, 2004, plaintiff consumed numerous valium pills that had been prescribed to assist him in dealing with work-related stress.  (Pollock Dep. 110; Albert Einstein Healthcare Network Emergency Physician Tracking Addendum, 9/17/08, Ex. 11 to Defs.' Mot.)  Thereafter, plaintiff telephoned his workplace and asked to speak with defendant Clark.  (Defs.' Mot. 6; Pl.'s Resp. 11.)  Before speaking to defendant Clark, plaintiff spoke to defendant Cook.  (Defs.' Mot. 6; Pl.'s Resp. 7.)  Plaintiff told defendant Cook that he did not wish to speak with him and that he wished to speak with defendant Clark.  (Defs.' Mot. 6; Pl.'s Resp. 11.)

There is a dispute as to what plaintiff stated to defendant Clark once defendant Clark answered the telephone.  Plaintiff alleges that he said to defendant Clark: "You tried to pull him

6

off of me.  You tried to stop him but it didn't work.  Tell him I'm coming to see him."  (Pollock

Dep. 107, 109-10.)  Defendant Clark reported to an investigator and stated at his deposition that

plaintiff stated: "Lieutenant Clark, you've always treated me fairly.  However, I just tried to kill

my wife and I just took a bunch of pills.  But before I go, I am coming to get Sergeant Cook."

(Clark Dep. II at 27; Philadelphia Police Dept. Investigation Report, 9/17/04, Ex. 10 to Defs.'

Mot.)

      Plaintiff alleges that he had no intent to harm defendant Cook and that his intent was only

to "cuss [defendant Cook] out."  (Pl.'s Resp. 11; Pollock Dep. 110.)  Plaintiff also alleges that his

statement on the telephone did not cause alarm among the personnel at the Northwest Detective

Division as evidenced by several employees joking about plaintiff's call shortly after it was

received.  (Pl.'s Resp. 12; McCarthy Dep. 13-14; Harris Dep. 36.)

      After speaking with plaintiff, defendant Clark instructed police personnel to secure the

facility.  (Clark Dep. I at 44-45.)  Detective Betancourt (now Santos) called plaintiff and spoke

with him.  (Santos Dep., Ex. G to Pl.'s Resp. at 7.)  She asked plaintiff not to come into the

building, but instead to meet her outside.  (Id. at 7, 11-12.)  She and other officers went to meet

plaintiff outside.  (Defs.' Mot. 6; Pl.'s Resp. 14.)  Plaintiff appeared not to be himself and he

explained to the officers that he had taken pills.  (Swinton Dep. 26-27; Santos Dep. 19.)

      Plaintiff was patted down for weapons and was found to be unarmed.  (Grace Dep., Ex. J

to Pl.'s Resp. at 20.)  The officers found that plaintiff was acting lethargic and not threatening.

(Swinton Dep. 27; Clark Dep. I at 54.)  Because the officers were worried about plaintiff's

health, they walked him to a fire house from which he was taken to the hospital.  (Swinton Dep.

27; Clark Dep. I at 61-62.)  At the hospital, he was treated with charcoal for ingestion of twenty-

7

seven valium pills.  (Albert Einstein Healthcare Network Emergency Physician Tracking Addendum, Ex. 11 to Defs.' Mot.)

Upon leaving the hospital, plaintiff was arrested.  (Pollock Dep. 109.)  Plaintiff was subsequently charged with making terroristic threats against defendant Cook.  (Defs.' Mot. 6; Pl.'s Resp. 15.)

At the time plaintiff was taken to the hospital, Officer Grace moved plaintiff's car because plaintiff had parked it illegally behind a laundromat when he first arrived at the facility.  (Clark Dep. I at 59-60; Grace Dep. 21, 23-24.)  Officer Grace moved the car to the police station parking lot, which required that he perform a quick safety check of the vehicle.  (Grace Dep. 20, 25.) During that safety check, Officer Grace discovered a green substance initially suspected of being marijuana.  (Id. at 25.)  Later tests revealed that the substance was actually green tea. (Philadelphia Police Dept. Chemistry Lab. Report, Ex. W to Pl.'s Resp.)  After plaintiff's arrest, officers seized a gun from his home, which had been lawfully registered in his name, as well as a box cutter.  (Pl.'s Resp. 19; Prop. Receipt. No. 2538947, Ex. X to Pl.'s Resp.; Prop. Receipt No. 2538946, Ex. AA to Pl.'s Resp.)  Plaintiff alleges that the gun was improperly destroyed by the Police Department on February 13, 2007.  (Pl.'s Resp. 25.)  The green tea and box cutter were eventually returned to plaintiff.  (Id.)

### E.      Plaintiff's Dismissal from Employment

On September 21, 2004, the Police Department Internal Affairs Division (IAD) gave plaintiff a notice of suspension with intent to dismiss.  (Notice of Suspension, Ex. CC to Pl.'s Resp.)  The notice described the events of September 17, 2004, and stated that plaintiff had engaged in "conduct unbecoming an employee."  (Id.)  Also described in the notice were items

8

seized from plaintiff, including the alleged marijuana.  (Id.)  Contrary to police procedures, the

marijuana was not described as "alleged marijuana" in the report as is proper before tests confirm

the nature of a substance.  (Kirkland Dep., 7/31/07, Ex. 13 to Defs.' Mot. at 91, 112-13; Grace

Dep. 46-47.)

Prior to providing plaintiff with a notice of dismissal, the IAD conducted a "Gniotek"

procedure[1] to gather information in advance of plaintiff's possible termination.  (Levins Dep., Ex.

DD to Pl.'s Resp. at 6, 10.)  IAD's investigation continued after plaintiff's dismissal to determine

if there was anything to add to the information previously gathered.  (Id. at 48.)  No additional

information was revealed during that investigation.  (Id.)  However, it is plaintiff's position that

the investigation was inadequate and that it failed to elicit critical information.  (Pl.'s Resp. 21-

23.)

Plaintiff was dismissed from his job with the City on October 20, 2004.  (Notice of

Dismissal, Ex. HH to Pl.'s Resp.)  On July 3, 2006, he was acquitted in the Philadelphia Court of

Common Pleas of the charge of making terroristic threats.  (Defs.' Mot. 6; Pl.'s Resp. 24.)

## III.   PROCEDURAL HISTORY

On September 13, 2006, plaintiff filed a Complaint naming as defendants the City and four

employees of the City in their individual capacities: Tyrone Cook, James Clark, John Doe and

Sylvester Johnson.  On November 20, 2006, defendants filed a Motion to Dismiss Count One,

Count Three, Count Four, Count Six and Count Seven of Plaintiff's Complaint.  By Order and

Memorandum dated February 17, 2007, the Court granted in part and denied in part defendants'

---

[1] The "Gniotek procedure" is an investigative process conducted before a Police
Department employee is dismissed.  (Levins Dep., Ex. DD to Pl.'s Resp. at 6, 10.)  It is named
after a police officer.  (Id.)

motion.  See Pollock v. City of Philadelphia, 2007 WL 576264 (E.D. Pa. Feb. 17, 2007).  The Court granted without prejudice defendants' motion to dismiss Count One of the Complaint alleging an equal protection violation against defendant Cook pursuant to 42 U.S.C. § 1983 and denied the motion in all other respects.  Count One of the Complaint was dismissed on the ground that plaintiff had failed to adequately plead that he was treated differently than other individuals.

On March 13, 2007, plaintiff filed an Amended Complaint.  Plaintiff subsequently filed a Second Amended Complaint on June 26, 2007.  The Second Amended Complaint asserts claims under 42 U.S.C. § 1983 (Counts One, Two, Three, Four and Five) and 42 U.S.C. § 1981 (Counts Six and Seven).  With respect to his § 1983 claims, plaintiff alleges that his equal protection rights were violated, that he was retaliated against in violation of the First Amendment, and that he was unlawfully seized in violation of the Fourth Amendment.  Plaintiff seeks compensatory damages against defendants for the costs associated with defense of the terroristic threats charge brought against him and for the emotional distress suffered as a result of the charge, back pay and equitable relief including front pay and/or reinstatement, attorneys fees and costs, and punitive damages against defendants Cook, Clark and Johnson in their individual capacities.

On September 10, 2007, defendants filed the instant Motion for Summary Judgment.  In the motion, defendants seek entry of judgment in their favor on all counts of the Second Amended Complaint.

## IV.    STANDARD OF REVIEW

### A.    Summary Judgment Standard

A court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is material when it "might affect the

outcome of the suit under the governing law." Id.  In considering a motion for summary

judgment, the "facts must be viewed in the light most favorable to the party opposing summary

judgment." Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).

The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory

allegations, or suspicions" to support its claim.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965,

969 (3d Cir. 1982).

### B.    Qualified Immunity – Counts One through Five

Defendants claim that they are entitled to qualified immunity.  The principles governing

claims of qualified immunity are well-established.  "Under the doctrine of qualified immunity,

'government officials performing discretionary functions generally are shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" Beers-Capitol v.

Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818

(1982)).

"A court evaluating a claim of qualified immunity 'must first determine whether the

plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to

determine whether that right was clearly established at the time of the alleged violation.'" Wilson

v. Layne, 526 U.S. 603, 609 (1999) (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)); see also

11

Saucier v. Katz, 533 U.S. 194, 201-02 (2001) (further explicating two-step inquiry); Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  "The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'"  Davis v. Hall, 375 F.3d 703, 711-12 (8th Cir. 2004) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); Curley, 499 F.3d at 206; cf. Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").  The Court will address each of plaintiff's claims against the individual defendants in the context of a qualified immunity analysis.

**C.      42 U.S.C. § 1983 – Counts One through Five**

In Counts One through Five of the Second Amended Complaint, plaintiff seeks damages under 42 U.S.C. § 1983 against defendants Cook, Clark and Johnson in their individual capacities. Section § 1983 provides, in relevant part, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  To establish a claim under § 1983, a plaintiff must show that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Thus, to establish that the individual defendants are liable for violating plaintiff's rights, plaintiff must demonstrate either that a defendant with policymaking authority "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm," <u>A.M. v. Luzerne County Juv. Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004) (quoting <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720, 725 (3d Cir. 1989)), or that a defendant "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." <u>Id.</u> (citing <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

## V.    DISCUSSION

### A.    Plaintiff's Claims Against the Individual Defendants – Qualified Immunity Analysis

#### 1.    Equal Protection Claim Against Defendant Cook – Count One

In Count One of the Second Amended Complaint, plaintiff asserts an equal protection claim under § 1983 against defendant Cook.  Plaintiff alleges that defendant Cook discriminated against plaintiff on the basis of his race by demeaning him, recording him absent when he had actually worked, creating messes and ordering him to clean them up, and referring to him using a racially derogatory term.  <u>See</u> (2d Am. Compl. ¶ 14; Pl.'s Resp. 4-5.)  Plaintiff contends that defendant Cook's conduct subjected him to severe, pervasive, and objectively offensive harassment, which affected the terms and conditions of his employment.  Plaintiff further

13

contends that defendant Cook knew or should have known "that harassing plaintiff on the basis of his race was illegal and that his actions were not reasonable as established at the time he took said actions." (2d Am. Compl. ¶ 14.)

Defendants concede that defendant Cook acted under state law for purposes of § 1983. (Defs.' Mot. 8.) However, defendants argue that plaintiff's equal protection claim fails because he has not produced evidence that he was treated differently than similarly situated employees. (Id. at 9.) Specifically, defendants argue that "[p]laintiff's claim in Count One is for a 'hostile work environment,' yet plaintiff brings these claims under section 1983 despite the fact that there is no constitutional right implicated in a general claim of a hostile work environment." (Id.) Defendants further argue that plaintiff has not shown that he was subjected to a hostile work environment, and that he is therefore not entitled to relief even if such a claim is cognizable under § 1983. (Id. at 13-14.)

In its Order and Memorandum dated February 17, 2007, the Court dismissed without prejudice the equal protection claim asserted in plaintiff's initial Complaint on the ground that plaintiff had "failed to allege that he was treated in any way differently than any other individuals, a requirement for pleading an equal protection claim." Pollock, 2007 WL 576264, at *4. Plaintiff included substantially similar equal protection allegations in his First and Second Amended Complaints to those dismissed by the Court. No motions to dismiss the equal protection claims in those complaints were filed.

In its February 17, 2007 Memorandum dismissing the equal protection claim, the Court relied on Second Baptist Church v. Gilpin Twp., 118 F. App'x 615, 618 (3d Cir. 2004), and Keefer v. Durkos, 371 F. Supp. 2d 686, 696-97 (W.D. Pa. 2005). While those cases accurately

14

state the law with respect to equal protection claims, they do not address the specific issue raised

by plaintiff in opposition to defendants' motion – that is, whether proving the existence of a

hostile work environment as defined under Title VII case law is a valid method of establishing an

equal protection violation in the racial discrimination context.  In reconsidering the issue, the

Court concludes, for the reasons set forth below, that plaintiff can establish an equal protection

claim based on a hostile work environment.

### a.    Constitutional Violation

### i.    Legal Standard for Hostile Work Environment Claim

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult

that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment, [a hostile work environment claim is established]."[2]

Oncale v. Sundowner Offshore Servs. Inc., 523 U.S. 75, 78 (1998) (quoting Harris v. Forklift

Sys., Inc., 510 U.S. 17, 21 (1993)).  In order to prove a hostile work environment claim against an

individual defendant, a plaintiff must show: (1) that he or she suffered intentional discrimination

because of race; (2) the discrimination was severe or pervasive;[3] (3) the discrimination

---

[2] Courts that have analyzed § 1983 claims under the hostile work environment framework have relied on Title VII cases establishing the contours of such claims.  See, e.g., McPhaul v. Bd. of Comm'rs of Madison County, 226 F.3d 558, 567 (7th Cir. 2000) ("Because section 1983 claims generally follow 'the contours of Title VII claims,' we will apply the same 'hostile environment' standard that is applied in Title VII cases.").  Thus, the Court derives the legal standard for analyzing plaintiff's claim from Supreme Court and Third Circuit Title VII hostile work environment decisions.

[3] While the Third Circuit stated in Andrews v. Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990), that the discrimination in question must have been "pervasive and regular," it has since adopted the Supreme Court's "severe or pervasive" standard.  See Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405 (2006) (citations omitted).

detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) a basis for personal liability.[4]  See Andrews v. Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990) (setting forth elements of Title VII hostile work environment claim).

For the conduct in question to have violated the equal protection clause it must create an employment environment that is "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so."  Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (citing Harris, Inc., 510 U.S. at 21-22).  To determine whether a work environment is sufficiently "hostile" or "abusive," the Supreme Court has made clear that a court must look to the totality of the circumstances including such factors as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Faragher, 524 U.S. at 787-88 (quoting Harris, 510 U.S. at 23).

### ii.    Applicability of Hostile Work Environment Standard to § 1983 Claims

It is well-settled that "[t]o bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, [a] plaintiff[] must prove the existence of purposeful discrimination."  Keenan v.

---

[4] The Third Circuit has described the fifth element of a Title VII hostile work claim as requiring respondeat superior liability.  Andrews v. Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).  However, there is no respondeat superior liability for claims against individuals under § 1983.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Thus, to prove that defendant Cook is liable under § 1983, plaintiff must establish that defendant Cook personally subjected plaintiff to a hostile work environment.  See Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996).

City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992) (quoting Andrews, 895 F.2d at 1478; see also Batson v. Kentucky, 476 U.S. 79, 93 (1986).  Thus, "[i]n order for a § 1983 plaintiff to survive a motion for summary judgment where intent is an element of his claim, the plaintiff must provide 'affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.'"  Johnson v. Anhorn, 416 F. Supp. 2d 338, 376 (E.D. Pa. 2006) (quoting Crawford-El v. Britton, 523 U.S. 574, 600 (1998)).  The question raised in the parties' briefs is whether proving the existence of a hostile work environment is a means of meeting this burden.

While the Third Circuit has held that a plaintiff may bring claims under Title VII and the Equal Protection Clause arising from the same set of facts, Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1079 (3d Cir. 1990), it has not addressed the specific question of whether a hostile work environment claim may be asserted under § 1983.  However, the numerous circuits that have addressed the question have all reached the same conclusion: proving the existence of a hostile work environment is a means of establishing an equal protection violation.  See, e.g., Rivera v. Puerto Rico Aqueduct and Sewers Auth., 331 F.3d 183, 191-92 (1st Cir. 2003) (stating that "the prima facie elements to establish liability are the same under [Title VII and § 1983]" when a plaintiff asserts a hostile work environment claim); Nieto v. Kapoor, 268 F.3d 1208, 1217-20 (10th Cir. 2001) (holding defendant liable for equal protection violation after plaintiff established existence of hostile work environment); McPhaul v. Bd. of Comm'rs of Madison County, 226 F.3d 558, 567 (7th Cir. 2000) ("Because section 1983 claims generally follow 'the contours of Title VII claims,' we will apply the same 'hostile environment' standard that is applied in Title VII cases."); Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996) (citations omitted) ("According

17

to Title VII law, which is utilized by courts considering § 1983 Equal Protection claims, a plaintiff must prove discrimination that was 'sufficiently severe or pervasive' to alter the conditions of his employment in order to prevail on a hostile work environment claim."); Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994) (applying Title VII hostile work environment framework to equal protection claim based on sexual harassment); Boutros v. Canton Reg'l Transit Auth., 997 F.2d 198, 202-04 (6th Cir. 1993) (analyzing equal protection claim based on national origin under Title VII hostile work environment framework).

Further, district courts in this circuit have utilized Title VII's hostile work environment framework in the context of discrimination claims brought under the Equal Protection Clause. See, e.g., Graham v. Avella Area Sch. Dist., No. 05-1344, 2008 WL 203359, *5 (W.D. Pa. Jan. 24, 2008) (addressing hostile work environment claim brought pursuant to § 1983); Hartley v. Pocono Mountain Reg'l Police Dept., No. 04-2045, 2007 WL 906180, *4-5 (M.D. Pa. March 22, 2007) (overruling Magistrate Judge's recommended grant of summary judgment on equal protection claim where plaintiff had presented sufficient evidence to raise jury question with respect to her hostile work environment claim under Title VII); Hanani v. State of New Jersey, No. 03-3111, 2005 WL 1308231, *7 (D.N.J. May 31, 2005) (considering hostile work environment claims under Title VII & § 1983); Hurley v. Atlantic City Police Dept., Nos. 93-260 & 94-1122, 1995 WL 854478, *9-10 (D.N.J. Aug. 4, 1995) (analyzing equal protection sexual harassment claim under hostile work environment standard and noting that "[the court's] inquiry here mirrors that with regard to the Title VII claims").

The Court agrees with those courts that have held that a plaintiff may prove an equal protection claim by establishing that he or she was subjected to a hostile work environment.

Accordingly, it will address plaintiff's argument that he was subjected to a hostile work environment by defendant Cook.[5]

### iii.    Analysis

To establish a violation of the Equal Protection Clause, plaintiff must present evidence that he was subjected to a hostile work environment.  This requires proving the five elements set forth by the Third Circuit in Andrews: 1) intentional discrimination based on race; 2) severe or pervasive discrimination; 3) detrimental effect on plaintiff; 4) discrimination would detrimentally affect a reasonable person of same race; and 5) a basis for personal liability.  895 F.2d at 1482.

Defendants argue that plaintiff has failed to present evidence that the alleged discrimination was driven by racial animus or that it was severe or pervasive.  In response, plaintiff cites the numerous instances of mistreatment alleged in plaintiff's deposition and declaration as evidence of severe or pervasive racial discrimination.  For the reasons set forth below, the Court agrees with plaintiff that there is a genuine issue of material fact as to whether plaintiff was subjected to intentional discrimination that was severe or pervasive.

The first element of a hostile work environment claim that plaintiff must establish – and the lynchpin of an equal protection claim alleging race discrimination – is that defendant Cook intentionally discriminated against plaintiff on account of his race.  In evaluating defendant Cook's state of mind, the Court may consider both "facially neutral mistreatment . . . [and] overt [racial] discrimination . . . [which] in sum constitute[ ] the hostile work environment."  Cardenas v. Massey, 269 F.3d 251, 261 (3d Cir. 2001) (quoting Durham Life Ins. Co. v. Evans, 166 F.3d

---

[5] Defendants also argue that plaintiff's claim fails because he has not shown that defendant Cook took an adverse action on the basis of plaintiff's race as required under McDonnell-Douglas v. Green, 411 U.S. 792 (1973).  (Defs.' Mot. 11.)  However, because plaintiff asserts a hostile work environment claim, and not a claim based on a discrete discriminatory act, the McDonnell-Douglas framework does not apply to plaintiff's claim.

139, 148 (3d Cir. 1999)).  A "discrimination analysis must concentrate not on individual incidents, but on the overall scenario."  Id. (citations committed).

In this case, plaintiff has presented evidence of discrimination through both overtly racist and facially neutral conduct.  With respect to overtly racist conduct, plaintiff alleges in his deposition testimony and sworn declaration that defendant Cook referred to him as a "dumb nigger with an easy job."  (Pollock Dep. 87; Pl.'s Dec. ¶ 14.)  With respect to facially neutral conduct, plaintiff alleges that defendant Cook: 1) changed plaintiff's time card and marked him absent when he had worked; 2) reduced plaintiff's pay without cause; 3) spit sunflower seeds and shells from other nuts in areas already cleaned by plaintiff and directed plaintiff to clean the areas; 4) cursed at plaintiff; 5) picked his nose and ordered plaintiff to clean it up; 6) yelled at plaintiff and called him names in front of others; and 7) threatened to write plaintiff up.  (Pl.'s Resp. 4-5.)

In support of his claim, plaintiff also points to evidence that supports the inference that defendant Cook's treatment of him reflected racial bias.  Specifically, plaintiff states that coworkers and other City personnel gave defendant Cook the nickname "Sarge" and plaintiff the nickname "T.J." representing characters from the movie "Soldier's Story" in which an African-American army sergeant mistreated an African-American enlisted man because of his race (Pollock Dep. 88-89), and that defendant Clark stated that defendant Cook "treated him like a slave," (Pl.'s Dec. ¶ 22).

The Court concludes that plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether defendant Cook's alleged mistreatment of plaintiff was

motivated by racial bias.[6]  While the majority of the conduct plaintiff cites is facially neutral, the use of a racial slur, when combined with the broader pattern of mistreatment, is sufficient to raise an inference of racial discrimination.

The Court also concludes that there is a genuine issue of material fact as to whether defendant Cook's allegedly discriminatory conduct was "severe or pervasive."  While plaintiff has only presented evidence of one overtly racist statement by defendant Cook, the Court may consider facially neutral conduct in assessing whether the discrimination was severe or pervasive.  See Aman v. Cort Furn. Rental Corp., 85 F.3d 1074, 1081-84 (3d Cir. 1996); Cardenas, 269 F.3d at 261.

As did the plaintiff in Aman, 85 F.3d at 1083, plaintiff alleges that defendant Cook engaged in several facially neutral acts that prevented him from performing his job, including marking him absent when he was present, reducing his pay without cause, cursing at him, and threatening to write him up.  Plaintiff further alleges that defendant Cook tore up his transfer papers when plaintiff sought to leave his assigned building to avoid defendant Cook's supervision and that he spat out seeds and shells and tossed waste from his nose into areas plaintiff had cleaned.

---

[6] The Court notes that defendant Cook, like plaintiff, is of African-American descent. While defendants argue that fact supports granting summary judgment, the Supreme Court has rejected the application of a "conclusive presumption" that an individual would not discriminate against someone of the same race.  See Oncale v. Sundowner Offshore Servs. Inc., 523 U.S. 75, 78 (1998) ("[I]n the . . . context of racial discrimination in the workplace we have rejected any conclusive presumption that an employer will not discriminate against members of his own race.").  Thus, while the jury may consider defendant Cook's race in deciding whether his conduct was motivated by racial bias, it is not a basis for granting summary judgment.

According to plaintiff, defendant Cook's harassment of him occurred on a daily basis.  The harassment caused plaintiff such severe stress that he was prescribed medication and forced to take sick days.  After the incident in which defendant Cook tore up his transfer papers, plaintiff was taken to the hospital because of an anxiety attack.  Based on this evidence, plaintiff has presented a genuine issue of material fact as to whether defendant Cook's conduct was severe or pervasive and detrimentally affected plaintiff.

The Court also concludes that plaintiff has raised a genuine issue of material fact as to whether "the discrimination would detrimentally affect a reasonable person of the same race in that position," Andrews, 895 F.2d at 1482, in view of the evidence that plaintiff's pay was reduced without cause, he was cursed at, and he was forced to return to locations he already cleaned because his supervisor spit out shells and tossed waste from his nose into those areas.  Finally, there is evidence that defendant Cook was personally liable for the alleged wrongdoing – all of plaintiff's allegations of mistreatment that occurred during his employment as a custodian involve defendant Cook.  Thus, plaintiff has raised a genuine issue of material fact as to whether defendant Cook created a hostile work environment.

### b.    Clearly Established Constitutional Right

Because the Court concludes that plaintiff has presented sufficient evidence of his equal protection claim, it must now determine whether defendant Cook's conduct, if proven, "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known.'" Beers-Capitol, 256 F.3d at 142 n.15.

The equal protection violation alleged in this case consisted of severe or pervasive harassment motivated by racial animus.  An objectively reasonable administrative sergeant could

22

not have believed in 2004, when the alleged discrimination took place, that such conduct was constitutionally permissible.  See, e.g., Jemmott, 85 F.3d at 67 (denying qualified immunity to supervisory corrections officials who subjected plaintiff to hostile work environment on account of his race in 1991).  Thus, the Court denies Defendants' Motion for Summary Judgment as to Count One.

### c.    Outstanding Issues of Fact Under Forbes

As required by Forbes v. Twp. of Lower Merion, 313 F.3d 144, 146 (3d Cir. 2002), the Court must specify the facts relevant to qualified immunity for plaintiff's equal protection claim that are in dispute.  The Court identifies those facts, inter alia, as follows:

- whether defendant Cook reduced plaintiff's pay without reason, accused plaintiff of being absent when he was present, screamed at him and called him derogatory terms, spit seeds and threw waste from his nose into areas plaintiff had already cleaned, prevented plaintiff from taking his medication, and otherwise harassed and mistreated plaintiff;

- whether defendant Cook's harassment and mistreatment of plaintiff was motivated by racial animus;

- whether defendant Cook's harassment and mistreatment of plaintiff was severe or pervasive.

At trial, a jury will have to resolve these and other factual disputes relevant to the question of whether defendant Cook is entitled to qualified immunity for the equal protection claim.

### 2.    Plaintiff's First Amendment Claims Against Defendants Clark, Cook and Johnson – Counts Two through Four

In Counts Two, Three and Four, plaintiff asserts claims for violations of his First Amendment rights pursuant to § 1983 against defendants Clark, Cook and Johnson.  Specifically,

23

plaintiff alleges that he was arrested and terminated in retaliation for complaining about racial discrimination.  He also claims that defendant Cook's treatment of him worsened after he complained to defendant Clark about discrimination.

For the reasons set forth below, the Court grants defendants' motion for summary judgment as to plaintiff's First Amendment claims in Counts Two, Three and Four of the Second Amended Complaint.  The Court concludes that plaintiff has not introduced sufficient evidence to establish the deprivation of a constitutional right under the First Amendment.  Because of this determination, the Court does not reach the second step of the qualified immunity analysis in ruling on plaintiff's First Amendment claims.

### a.      Legal Standard for First Amendment Claim

In order for plaintiff to succeed on his First Amendment claim that he was arrested, dismissed from his job, and harassed by defendant Cook in retaliation for his complaints of racial discrimination, plaintiff must prove: (1) that he engaged in protected activity; (2) that the individually named defendants responded by arresting, dismissing or harassing plaintiff; and (3) that plaintiff's protected activity was the cause of the arrest, dismissal, or harassment.  See Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).

With respect to the first of these elements, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  Reilly v. City of Atlantic City, --- F.3d ---, 2008 WL 2579185, *7 (3d Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 417 (2006)).  Speech is protected activity only when it relates to "any matter of political, social, or other concern to the community."  Connick v. Myers, 461 U.S. 138, 146 (1983).  Further, courts employ a balancing test to determine if such public concern speech by a government employee is protected.  Latessa v. N.J. Racing Comm'n,

113 F.3d 1313, 1319 (3d Cir. 1997).  Specifically, the public's interest in employee speech "must not be outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees."  Id. (quoting Watters v. City of Philadelphia, 55 F.3d 886, 892 (3d Cir. 1995)).

With regard to the second and third prongs, the Supreme Court has established a two-step burden-shifting approach.  See Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)); see also Baldassare v. State of New Jersey, 250 F.3d 188, 195-96 (3d Cir. 2001).  First, plaintiff has the burden of proving that the protected activity was a "substantial or motivating" factor in his unfavorable treatment.  Id. at 195 (quoting Mt. Healthy, 429 U.S. at 287).  If plaintiff meets this burden, the burden shifts to defendants to demonstrate, by a preponderance of the evidence, that the challenged actions would have taken place even "in the absence of the protected conduct."  Id. (citing Mt. Healthy, 429 U.S. at 287).

### b.      First Amendment Claim Against Defendant Clark – Count Two

Plaintiff alleges that defendant Clark retaliated against him for his complaints about racial discrimination by having plaintiff arrested, suspended and ultimately dismissed.  In response, defendants argue that plaintiff never engaged in speech protected under the First Amendment.

The first prong of a First Amendment claim requires the Court to assess whether plaintiff engaged in speech protected by the First Amendment.  Defendants argue in their brief that plaintiff only complained to defendant Clark about general unfair treatment and that "no complaints of race discrimination were ever made by the plaintiff prior to plaintiff's dismissal." (Defs.' Mot. 15.)  Defendants are correct that as of the time they filed their motion, the record was

25

devoid of evidence that plaintiff complained about race discrimination.  However, plaintiff

submitted a declaration with his response to defendants' motion in which he specifically avers that

he complained to defendant Clark about race discrimination prior to his arrest and suspension.

(Pl.'s Dec. ¶ 22.)  Further, plaintiff points to other evidence in the record – such as defendant

Clark's statement in his deposition that he advised plaintiff that he could file a complaint with the

EEOC if he felt he was being discriminated against – as evidence that plaintiff complained about

racial discrimination.  (Pl.'s Resp. 42, 52.)  Viewing this evidence in the light most favorable to

plaintiff, the Court concludes that plaintiff has presented a genuine issue of material fact as to

whether he complained to defendant Clark about racial discrimination.

Assuming that plaintiff complained about racial discrimination by his supervisor, such a

complaint would bear on a "matter of political, social, or other concern to the community."

Connick, 461 at 146.  In Connick, the Supreme Court described a complaint about race

discrimination in public employment as "a matter inherently of public concern."  461 U.S. at 148

n.8.  Similarly, in Rode, the Third Circuit held a public employee's complaints to a reporter about

racial discrimination in the state police force constituted protected speech.  845 F.2d at 1201.

Pursuant to Third Circuit case law, plaintiff's alleged complaints about harassment remain

protected under the First Amendment even though they were made in private to a supervisor and

not communicated to the general public.  See Azzaro v. County of Alleghany, 110 F.3d 968, 978-

79 (3d Cir. 1997) (en banc) (holding plaintiff public employee's private complaint to supervisors

about single incident of sexual harassment protected speech).  Thus, the Court concludes that

plaintiff engaged in protected conduct.

The second step of the Court's First Amendment analysis requires balancing the public's

interest in plaintiff's speech with the interest of the state as an employer in providing efficient

26

public services.  Latessa, 113 F.3d at 1319.  As noted above, the speech in this case only concerned plaintiff and his treatment by defendant Cook.  Thus, because of the limited nature of the complaint, the public's interest in its content is not great.  Nonetheless, the disruption to the work force caused by plaintiff's complaint was minimal as he directed his concern to defendant Cook's immediate supervisor in a discrete manner.  Accordingly, plaintiff's expression caused almost no disruption, and the balance of interests weighs in plaintiff's favor.

Having determined that plaintiff's alleged speech was protected, the Court must decide whether plaintiff presented evidence that defendant Clark retaliated against plaintiff for that speech.  The retaliatory conduct in question in this case consists of defendant Clark's actions in responding to plaintiff's telephone call on September 17, 2004, and his subsequent role in the investigation and prosecution of plaintiff.  Specifically, plaintiff offers a different account of what he said on the telephone to defendant Clark than that which defendant Clark relayed to investigators and posits that defendant Clark intentionally misled fellow officers and investigators as to whether plaintiff threatened defendant Cook.

In order to prevail on this issue at trial plaintiff must establish that a public employee of ordinary firmness would be deterred from speaking on a matter of public concern if he feared arrest and dismissal as reprisal.  See Altieri v. Evanko, No. 98-5495, 2003 WL 22005716, *19 (E.D. Pa. Aug. 1, 2003) (quoting Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000)) ("A plaintiff . . . state[s] a cause of action for retaliatory harassment under § 1983 . . . if the court determines that the alleged acts of harassment, when viewed in their totality, are sufficiently adverse to 'deter a person of ordinary firmness from the exercise of his First Amendment rights.'").  Plaintiff must also demonstrate at trial that his complaint about racial discrimination

27

was a "substantial or motivating factor" in the actions defendant Clark took on the day of plaintiff's arrest.  See Hill, 411 F.3d at 125.  The Third Circuit recently explained the methods by which a plaintiff may prove this casual link:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Lauren W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Plaintiff avers in his declaration that he spoke to defendant Clark about defendant Cook's discriminatory behavior after returning to work following an anxiety attack on July 30, 2004. Thus, even on plaintiff's version of facts, approximately six weeks elapsed between when plaintiff engaged in protected conduct and when defendant Clark allegedly retaliated.  This evidence, taken alone, is insufficient to show causation.

In Thomas v. Town of Hammonton, the Third Circuit held that a period of three weeks between the time of a harassment complaint and dismissal did not constitute an "unusually suggestive temporal proximity." 351 F.3d 108, 114 (3d Cir. 2003).  Plaintiff concedes that the Third Circuit has only once found that timing alone was sufficient to establish causation.  (Pl.'s Resp. 41.)  In that case, the period between the protected conduct and alleged retaliation was two days.  Javil v. Avdel, 873 F.2d 701, 708 (3d Cir. 1989).  The six-week period in this case, without more, is insufficient to establish causation.

Plaintiff can also prevail on the causation issue by presenting evidence of temporal proximity coupled with a pattern of antagonism in the intervening period.  However, in this case,

there was no period of antagonism on the part of defendant Clark.  To the contrary, plaintiff asserts that defendant Clark attempted to help him when he complained about harassment and that defendant Clark repeatedly expressed concern about plaintiff's situation.  (Pl.'s Dec. ¶ 15, 21-23.)  Significantly, when plaintiff called defendant Clark and told him that he was coming to see defendant Cook, he first thanked defendant Clark for his efforts to improve plaintiff's treatment.  (Id. at ¶ 30; Pollock Dep. 107.)  Plaintiff's account is consistent with defendant Clark's testimony explaining the steps he took to ensure that plaintiff was treated fairly.  See, e.g., (Clark Dep. II at 36-38.)  There is also evidence that during a conversation with plaintiff, defendant Clark advised plaintiff that he could file a complaint with the EEOC if he felt he was a victim of discrimination (id. at 37-38), and that defendant Clark spoke to defendant Cook about plaintiff's perceived harsh treatment (id. at 16-18).

Plaintiff argues that defendant Clark "went to . . . lengths" to get plaintiff fired because "he knew and understood the import of [plaintiff's] complaints . . . and recognized that eliminating [plaintiff] from his position would end the complaints," (Pl.'s Resp. 49), but presents no evidence on that issue.  To the contrary, all of the evidence in the record, when viewed in any light, evinces Clark's intent to alleviate any unfair treatment plaintiff might have suffered.

Nonetheless, plaintiff contends that occurrences on the day of his arrest and irregularities in the investigation and prosecution of his case after his arrest are evidence of retaliatory animus on the part of defendant Clark.  The Court disagrees.

The only piece of evidence that even remotely speaks to defendant Clark's state of mind is the deposition testimony of Maureen McCarthy who was able to hear defendants Cook and Clark recounting to Captain Kirkland plaintiff's telephone call just after it took place.  She testified that

29

she heard the three men talking and that the men were not upset or concerned (McCarthy Dep. 13-14), and that there was laughter coming from the captain's office suggesting that plaintiff's call was not a serious event.  (Id.)  However, even if the jury believed that defendant Clark laughed after receiving plaintiff's telephone call, that evidence, without more, could not support the inference that his actions on the day of plaintiff's arrest were "substantially" motivated by the specific complaint plaintiff made about race discrimination.

There is not a single piece of evidence in the record supporting the inference that defendant Clark was upset at plaintiff for complaining about defendant Cook.  To the contrary, the uncontradicted testimony concerning defendant Clark's actions makes clear that he was responsive to plaintiff's complaints.  The fact that defendant Clark might have laughed at some point after plaintiff called the workplace might be evidence that he did not take the call seriously, yet it is undisputed that plaintiff placed the telephone call after taking numerous pills, and told defendant Clark that he was "coming to see" defendant Cook whom he disliked very much.  On these facts, no jury could find that defendant Clark, who moments later took steps to prevent a confrontation between plaintiff and defendant Cook and sent plaintiff to the hospital (without arresting him) to protect his health, was substantially motivated not by this call, but instead by a complaint of race discrimination made six weeks earlier that did not provoke a negative response at the time.  No jury could find it was plaintiff's protected speech, rather than the telephone call, that motivated defendant Clark.

Plaintiff bears the burden of proving the causation element of his retaliation claim. Viewing the facts in the light most favorable to plaintiff, there is no genuine issue of material fact as to whether defendant Clark retaliated against plaintiff because of his complaints about racial

30

discrimination.  Thus, the Court grants Defendants' Motion for Summary Judgment with respect to Count Two.

**c.      First Amendment Claim Against Defendant Cook – Count Three**

In Count Three of the Second Amended Complaint, plaintiff asserts a First Amendment claim pursuant to § 1983 against defendant Cook.  Specifically, plaintiff argues that defendant Cook retaliated against plaintiff by acting as complainant in the case against him and intensifying his mistreatment of plaintiff after learning of his complaints about discrimination.

As discussed in the preceding section of this decision, a public employee engages in protected conduct when he complains about racial discrimination by a supervisor.  Nonetheless, plaintiff's claim against defendant Cook fails because he has not presented any evidence that defendant Cook was aware of plaintiff's complaint to defendant Clark about racial discrimination.

Federal Rule of Civil Procedure 56(e) provides, in relevant part, that when "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial . . . ."  In plaintiff's response to defendants' motion, plaintiff states, in a conclusory fashion, that "[w]hether or not Clark communicated to Cook the exact nature of the complaint made by Robbie is a genuine issue of fact which is in dispute."  (Pl.'s Resp. 42.)  The Court disagrees with plaintiff.

In his declaration, plaintiff states that he complained to defendant Clark about discrimination.  (Pl.'s Dec. ¶ 22.)  However, plaintiff points to no evidence supporting the inference that defendant Cook was aware of that complaint.  To the contrary, when defendant Clark was asked at his deposition to describe what he told defendant Cook about plaintiff's

31

complaints, he answered: "I believe I said to him that Mr. Pollack [sic] came to me with a complaint that he was being overly hard on him and being unfair towards him, and I wanted to get the sergeant's take on what was going on between him and Mr. Pollack [sic]." (Clark Dep. II at 16.) Similarly, in describing how he relayed plaintiff's complaint to his supervisor, Captain Kirkland, defendant Clark testified that he told Captain Kirland "[t]hat [plaintiff] thought that Sergeant Cook was overly riding him, overly hard on him." (Id. at 23.) Defendant Cook stated in his deposition that he did not remember whether he was ever informed that plaintiff had complained about the way he was treated. (Cook Dep., Ex. Q to Pl.'s Resp. at 51.) Plaintiff points to no testimony offering a contrary version of events. Similarly, plaintiff cites no evidence of a formal discrimination complaint that might have been relayed to defendant Cook. Thus, there is no genuine issue of material fact on the question of whether defendant Clark communicated a complaint about racial bias, because plaintiff has presented no evidence in support of his position.

Defendant Cook's lack of knowledge of plaintiff's protected conduct is fatal to plaintiff's First Amendment claim against him.[7] As the Third Circuit has explained: "It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct . . . ." Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002). Because there is no genuine issue of material fact as to whether defendant Cook had knowledge that plaintiff complained of discrimination, and because general complaints about work conditions are not protected First Amendment speech, plaintiff has failed to establish a

---

[7] The fact that defendant Cook might have been aware that plaintiff generally complained about his treatment is insufficient to defeat summary judgment, because defendant Cook must have retaliated against plaintiff for protected speech. General employment-related complaints by a public employee are not protected by the First Amendment. See, e.g., Azzaro v. County of Allegheny, 110 F.3d 968, 976 (en banc) (3d Cir. 1997) ("Only a subset of speech that is protected for citizens is also protected for public employees: i.e. public concern speech.").

prima facie case of First Amendment retaliation against defendant Cook.  Thus, the Court grants

Defendants' Motion for Summary Judgment as to Count Three.

          **d.**      **First Amendment Claim Against Defendant Johnson – Count Four**

      Defendant Johnson was Commissioner of the City of Philadelphia Police Department at

the time of plaintiff's termination, and as such the official who made the final decision to

terminate plaintiff's employment.  (Johnson Statement, 6/12/07, Ex. 15 to Defs.' Mot. at 2, 3.)

Plaintiff argues that defendant Johnson terminated plaintiff's employment in retaliation for his

complaints about racial discrimination, though he does not point to any direct evidence of

retaliatory motive.  Rather, plaintiff argues that the reference to the recovery of a plastic bag of

marijuana from the trunk of his vehicle in the City's Notice of Dismissal is evidence that the

stated reasons for his termination were pretextual, because the substance had tested negative for

marijuana prior to the issuance of the Notice.  (Pl.'s Resp. 56-57.)  Defendants argue that

defendant Johnson is entitled to summary judgment because there is no evidence that he was

aware of any complaints of race discrimination by plaintiff.  The Court agrees with defendants on

this issue.

      As with defendant Cook, plaintiff has failed to come forward with any evidence that

defendant Johnson was aware of plaintiff's complaints of race discrimination to defendant Clark.

To the contrary, defendant Johnson explicitly stated during his deposition that he was not aware

"that [plaintiff] had complained of racial discrimination within the police department."  (Id. at 5.)

Plaintiff argues that the Court must disregard this evidence because of defendant Johnson's

interest in the outcome of the litigation.  In support of his position, plaintiff relies on Hill v. City

of Scranton, in which the Third Circuit held that in ruling on a summary judgment motion, a court should accord no weight to "even uncontradicted testimony of an interested witness where that testimony supports the movant."  411 F.3d at 132 n.22.  Significantly, plaintiff fails to disclose that the Third Circuit subsequently limited that statement.  In Lauren W., the Third Circuit stated that "[w]e cannot believe that the law precludes a party from presenting his own testimony on a summary judgment motion" and that "[t]he fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness."  480 F.3d at 272.  That is now the law in the Third Circuit.

In this case, defendant Johnson's testimony is plausible and consistent with other record evidence.  Specifically, it is consistent with the testimony of defendant Clark's supervisor, Captain Kirkland, who was not aware of plaintiff's complaints about racial discrimination (Kirkland Dep. 43-45), and with the testimony of Lieutenant John Mylnarski, who was responsible for investigating plaintiff's case and reporting to the Commissioner's office and who stated that he was not aware that plaintiff had ever complained about defendant Cook (Mylnarski Dep., Ex. FF to Pl.'s Resp. at 43-45).

Notwithstanding the lack of evidence that defendant Johnson knew of plaintiff's comments, plaintiff makes two arguments for why defendants' motion should be denied as to defendant Johnson.  First, plaintiff argues that other inconsistencies in the reasons for plaintiff's dismissal could cause jurors to disbelieve all of defendant Johnson's testimony and find that the stated reasons for firing plaintiff were pretextual.  Second, plaintiff argues that he was prevented from gathering evidence because the Court directed that defendant Johnson's deposition be

34

conducted by written questions in accordance with Federal Rule of Civil Procedure 31 instead of by oral questions pursuant to Federal Rule of Civil Procedure 30 as plaintiff originally requested.

The Court rejects plaintiff's first argument, because plaintiff must come forward with evidence that defendant Johnson knew of the protected conduct before he can prove that the protected conduct was the actual cause of his termination by defendant Johnson.  Cf. Ambrose, 303 F.3d at 494 (noting that while temporal proximity can be evidence of causation, it cannot show that a defendant had knowledge of protected speech).

With respect to plaintiff's second argument, defendants' counsel objected to plaintiff conducting an oral deposition of Commissioner Johnson because of his busy schedule.  (Pl.'s Resp. 55-56 n.16.)  At the time plaintiff sought to take defendant Johnson's deposition, he had already taken ten depositions and was seeking leave to take twelve more.  The Court directed plaintiff to submit written questions for defendant Johnson pursuant to Rule 31.  The Court also directed the parties to reach agreement as to the number of questions that could be asked after defendant Johnson objected to plaintiff's initial list of 110 questions as excessive.  (Id.) Notwithstanding these limitations, the Court explicitly told plaintiff's attorneys – during telephone conferences held on February 23, 2007, and May 17, 2007 – that they had the right to request an oral deposition in the event defendant Johnson's testimony under Rule 31 was insufficient.[8] Despite having been so advised, plaintiff failed to seek additional discovery after defendant

---

[8] Plaintiff also opines that the Court acted without "legal authority" by requiring the parties to reach agreement on a list of questions, which, according to plaintiff, gave defendants unprecedented veto power over plaintiff's inquiries.  (Pl.'s Resp. 55-56 n.14.)  The Court explicitly reiterated to plaintiff's counsel that plaintiff would be given the opportunity to pursue additional questioning if defendant Johnson's deposition was inadequate.  Plaintiff failed to take this opportunity and now mischaracterizes the proceedings in this case by arguing that the Court precluded counsel from obtaining sufficient discovery.

Johnson's deposition was taken.  Only now, in plaintiff's response to defendants' motion, does plaintiff renew his request to take an oral deposition.  The Court rejects plaintiff's request to conduct additional questioning of defendant Johnson at this stage of the litigation.

As with defendant Cook, plaintiff cannot prevail on a First Amendment claim against defendant Johnson because defendant Johnson was unaware of plaintiff's protected conduct.  <u>See</u> <u>Ambrose</u>, 303 F.3d at 493.  Thus, the Court grants Defendants' Motion for Summary Judgment as to Count Four.

### 3.    Fourth Amendment Claim Against Defendant Clark – Count Five

In Count Five of the Second Amended Complaint, plaintiff asserts a claim against defendant Clark for unlawful arrest in violation of plaintiff's Fourth Amendment rights.  Specifically, plaintiff argues that defendant Clark ordered his arrest without probable cause.  Defendants argue that even under plaintiff's version of events, the police had probable cause to arrest plaintiff.

### a.    Constitutional Violation

### i.    Probable Cause Standard

To establish a claim under the Fourth Amendment for false arrest, a plaintiff must demonstrate that the defendants lacked probable cause to arrest.  <u>See</u> <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988).  Probable cause to arrest "exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested."  <u>United States v. Myers</u>, 308 F.3d 251, 255 (3d Cir. 2002).

36

In determining whether probable cause existed, the Court considers the objective facts available to the officer at the time of the arrest and determines whether these facts were sufficient to justify a reasonable belief that the individual committed a crime.  See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir. 2000).  Probable cause requires more than mere suspicion that a person has committed a crime, but it does not require that the police officer have sufficient evidence to prove guilt beyond a reasonable doubt.  See Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (citing United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984)).  The crime or crimes with which a suspect are eventually charged is insignificant to the probable cause analysis.  See Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (citing Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)) ("Probable cause need only exist as to any offense that could be charged under the circumstances.").

"As a general rule, a government official's liability for causing an arrest is the same as for carrying it out."  Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000).  "It is thus clear that § 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion."  Id.

Plaintiff was arrested for the crime of "terroristic threats."  Under Pennsylvania law, that offense is defined as follows:

> A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> (1) commit any crime of violence with intent to terrorize another;
> (2) cause evacuation of a building, place of assembly or facility of public transportation; or
> (3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S.A. § 2706.

37

ii.     **Plaintiff Must Prove that Defendant Clark Arrested Him or Intentionally Caused His Arrest**

Plaintiff's Second Amended Complaint states that "[u]pon information and belief Defendant Clark was the person who initiated the criminal charges against plaintiff." (2d Am. Compl. ¶ 66.) As a threshold matter, the Court notes that the uncontradicted evidence in the record establishes that defendant Clark neither arrested plaintiff nor initiated criminal charges against him. To the contrary, plaintiff was arrested after Captain Kirkland directed defendant Clark to contact the District Attorney's Charging Unit for advice as to whether arrest was proper and after Detective Thomas Gaul conducted a pre-arrest investigation. (Clark Dep. II at 52-53; Gaul Dep., Ex. U to Pl.'s Resp. at 72-74.) Nonetheless, Detective Gaul stated at his deposition that defendant Clark was involved in the decision to arrest plaintiff. (Gaul Dep. 73.) Accordingly, plaintiff has presented a genuine issue of material fact as to whether defendant Clark was involved in or caused plaintiff's arrest. Thus, the Court will analyze whether there was probable cause to arrest plaintiff.

iii.     **Analysis**

Viewing the facts in the light most favorable to plaintiff, the Court concludes that defendant Clark and his fellow officers had probable cause to arrest plaintiff based on the events of September 17, 2004. Plaintiff called his workplace after ingesting a large number of valium pills. (Pollock Dep. 110.) He called to advise defendant Clark that he was coming to "see" defendant Cook. Specifically, he stated to defendant Clark that "You tried to pull [defendant Cook] off me. You tried to stop him but it didn't work. Tell him I'm coming to see him." (Id. at 109-10.) Plaintiff made these comments to defendant Clark, a supervisor who was familiar with

the history of tension and ill-will that existed between plaintiff and defendant Cook.  (Clark Dep. II at 29.)  Plaintiff arrived at his workplace moments after placing this telephone call to defendant Clark.  (Santos Dep. 7.)  According to plaintiff, plaintiff's intent in "coming to see" defendant Cook was to "humiliate" and "curse out" defendant Cook, because he wanted "a chance to curse the man out who had been treating me like shit for the last I don't know how long."  (Pollock Dep. 110.)

A person may be arrested for the crime of terroristic threats if that person, inter alia, "communicates, either directly or indirectly, a threat to . . . cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience."  18 Pa.C.S.A. § 2706.  Viewing the facts in the light most favorable to plaintiff, the police had sufficient evidence at the time of plaintiff's arrest to "warrant a person of reasonable caution to conclude that an offense ha[d] been committed by the person being arrested."  Myers, 308 F.3d at 255.  That evidence establishes probable cause for the arrest.

### b.      Clearly Established Constitutional Right

The question of whether the police had probable cause to arrest plaintiff is a close one. For that reason, the Court proceeds to the second step of the qualified immunity analysis.  The Court concludes that even if plaintiff had introduced sufficient evidence to establish the violation of a constitutional right, defendant Clark would be entitled to qualified immunity because no reasonable official in defendant Clark's situation would have understood that his conduct violated a clearly established constitutional right.  Saucier, 533 U.S. at 202 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

In this case, defendant Clark had knowledge of plaintiff and defendant Cook's poor relationship, observed that plaintiff appeared to be acting unusual at the time he arrived at the workplace, and received a telephone call in which plaintiff communicated an intent to come "see" defendant Cook because defendant Clark's previous attempts "to stop him . . . didn't work."

Defendant Clark recognized at the time events unfolded that the question of whether a crime had been committed was a close one.  (Clark Dep. II at 61-62.)  It is uncontradicted that he sought guidance from the District Attorney's office before taking legal action.  (Id. at 60-61.)  He only acquiesced in the decision to arrest plaintiff after receiving instructions to do so from the District Attorney's office.  (Id. at 53.)  The situation defendant Clark faced was sufficiently unusual, and the warning signs presented sufficiently serious, that a reasonable official would not have understood that he was violating the law in arresting plaintiff.  Thus, even assuming arguendo that probable cause was lacking, defendant Clark is entitled to qualified immunity on Count Five and the Court grants Defendants' Motion for Summary Judgment as to that Count.

### B.    Plaintiff's Claims Against the City of Philadelphia – Counts Six and Seven

In Counts Six and Seven of the Second Amended Complaint, plaintiff asserts claims against the City of Philadelphia under 42 U.S.C. § 1981.  In Count Six, plaintiff asserts a claim based on the City of Philadelphia's purported liability for the actions of defendant Cook.  In Count Seven, plaintiff asserts a retaliation claim.

Section 1981, as amended, provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

42 U.S.C. § 1981.

As a threshold matter, the parties dispute whether § 1981 affords a private right of action against state actors. The Supreme Court held in <u>Jett v. Dallas Indep. Sch. Dist.</u> that § 1983 provides the exclusive remedy for claims against municipalities for violations of individuals' rights. 491 U.S. 701, 731-32 (1989). However, since Congress amended § 1981 in 1991, circuit courts – and courts in the Eastern District of Pennsylvania – have split on the continued validity of the Court's holding in <u>Jett</u>. <u>See, e.g.</u>, <u>Roadcloud v. Pa. Bd. of Prob. & Parole</u>, No. 05-3787, 2006 WL 83453, *3 (E.D. Pa. Jan. 6, 2006) (noting split and citing cases on both sides of the issue).

The Third Circuit has yet to rule on the question of whether there is a private right action under § 1981. However, the Court need not resolve this issue because even if § 1981 does provide a private right of action against a state actor, plaintiff has produced insufficient evidence to sustain such a claim against the City.

For plaintiff to establish the City's liability under § 1981, he must satisfy the requirements set forth by the Supreme Court in <u>Monell v. Dep't of Soc. Servs. of the City of N.Y.</u>, 436 U.S. 658, 690 (1978), for establishing municipal liability under § 1983. <u>See, e.g.</u>, <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1214-15 (9th Cir. 1996) (holding that Civil Rights Act of 1991 overruled <u>Jett</u>, but that <u>Monell</u>'s limitations on § 1983 claims apply to § 1981 claims against municipalities); <u>Watkins v. Pa. Bd. of Prob. & Parole</u>, No. 02-2881, 2002 WL 32182088, *5-6 (E.D. Pa. Nov. 25, 2002) (same).

To establish <u>Monell</u> liability, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." <u>Bd. of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 403 (1997); <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989); <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 275 (3d Cir. 2000). A municipal "policy" may arise from the "decisions

41

of [a municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. of County Comm'rs of Bryan County, 520 U.S. at 403-404.  A municipal "custom" is a practice that has not been formally approved, but is "so widespread as to have the force of law." Id. at 404.

A plaintiff may identify a municipal policy by reference to individual conduct in the following three situations: "(1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred." See Hill v. Bor. of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006).

To satisfy the causation requirement of Monell, a plaintiff must demonstrate that a municipality was the "moving force" behind the alleged injury. " Bd. of County Comm'rs of Bryan County, 520 U.S. at 404.  "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.

Plaintiff concedes that he has no evidence of a municipal policy or custom sufficient to support his claim in Count Six of the Second Amended Complaint and consents to the entry of judgment in favor of defendants on that Count.  (Pl.'s Resp. 60 n.16.)  Thus, the Court grants Defendants' Motion for Summary Judgment as to Count Six.

With respect to Count Seven, plaintiff argues that defendant Johnson is a policymaker whose unlawful retaliation against plaintiff can be attributed to the City.  Specifically, plaintiff

42

contends that defendant Johnson's "action in terminating Mr. Pollock on a falsified pretense (claiming that Mr. Pollock had marijuana in his car when it clearly was not an illegal substance) is evidence upon which a jury could believe that it was a policy, practice, custom or procedure of the City of Philadelphia to retaliate against individuals who have complained of race discrimination." (Pl.'s Resp. 59-60.)

The Court has concluded there is no evidence that defendant Johnson knew of plaintiff's complaints about race discrimination and that, as a result, defendant Johnson is not liable for violating plaintiff's First Amendment rights.  For the same reason, the Court rejects plaintiff's retaliation claim against the City of Philadelphia.  If defendant Johnson did not violate plaintiff's First Amendment rights, no reasonable juror could find that his actions reflected a broader City custom of "retaliat[ing] against individuals who have complained of race discrimination," (id.), or that because of his high-level position, his wrongdoing can be attributed to the City.  Thus, the Court grants Defendants' Motion for Summary Judgment as to Count Seven.

## VI.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion for Summary Judgment.  The Court denies Defendants' Motion for Summary Judgment with respect to plaintiff's equal protection claim against defendant Cook in his individual capacity in Count One of the Second Amended Complaint and grants the motion in all other respects. Remaining for adjudication is plaintiff's claim against defendant Cook in Count One under the Equal Protection Clause.

An appropriate order follows.

43

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBBIE B. POLLOCK** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO. 06-4089** |
| | : | |
| **THE CITY OF PHILADELPHIA; TYRONE** | : | |
| **COOK; JAMES CLARK; and, SYLVESTER** | : | |
| **JOHNSON, in Their Individual Capacities** | : | |
| **Defendants.** | : | |

## O R D E R

**AND NOW**, this 7th day of August, 2008, upon consideration of Defendants' Motion for Summary Judgment (Document No. 30, filed September 10, 2007), and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Document No. 32, filed September 25, 2007), for the reasons stated in the attached Memorandum, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1.  Defendants' Motion for Summary Judgment is **DENIED** with respect to plaintiff's equal protection claim in Count One of the Second Amended Complaint against defendant Tyrone Cook in his individual capacity;

2.  Defendants' Motion for Summary Judgment is **GRANTED** with respect to plaintiff's claims against the City of Philadelphia, James Clark, and Sylvester Johnson, in Counts Two, Four, Five, Six and Seven of the Second Amended Complaint, and with respect to plaintiff's First Amendment claim against defendant Cook in Count Three of the Second Amended Complaint.

### BY THE COURT:

**/s/ Honorable Jan E. DuBois**
**JAN E. DUBOIS, J.**

44